## Teaching Certification of Aliens

BARTLE, *Attorney General*, January 14, 1981—You have requested our opinion whether the decision of the United States Supreme Court in Ambach v. Norwick, 441 U.S. 68 (1979), compels reversal of the advice rendered by this office in Official Opinion no. 9 of 1973. The Supreme Court, in Ambach, upheld provisions of the New York Education Law prohibiting certification as a public school teacher of any person who is not a citizen of the United States and has not manifested an intention to apply for citizenship. Opinion no. 9 of 1973 advised the Secretary of Education that comparable provisions of the Public School Code of March 10, 1949, P.L. 30, as amended, 24 P.S. §1-101 et seq., are unconstitutional.

On the assumption that Ambach does compel re-

versal of the advice rendered in Opinion no. 9 of 1973, you have also requested our opinion as to the status of resident aliens who have been permanently or provisionally certified as public school teachers in Pennsylvania since the issuance of that opinion.

1. Effect of Ambach v. Norwick upon Opinion 73-9.

Sections 1109 and 1202 of the Public School Code provide as follows:

24 P.S. § 11-1109.

"Every teacher employed to teach in the public schools of this Commonwealth . . . must be a citizen of the United States: Provided, That citizenship may be waived in the case of exchange teachers not permanently employed, and teachers employed for the purpose of teaching foreign languages, including special teachers who speak the idiomatic or colloquial language of immigrants residing in the school district, and employed for the purpose of easing the transition period of such immigrants."

24 P.S. § 12-1202.

"A certificate to teach shall not be granted or issued to any person not a citizen of the United States, except in the case of exchange teachers not permanently employed and teachers employed for the purpose of teaching foreign languages.

"In the case of a resident foreign national holding an immigrant visa who has declared, in writing, to the Department of Public Instruction the intention of becoming a citizen of the United States, such person shall be eligible for a provisional college certificate."

In Opinion no. 9 of 1973, this office advised the Secretary of Education that, insofar as the foregoing provisions prohibit otherwise qualified resident

aliens from teaching in the public schools on the same terms as qualified citizens, they violate the Equal Protection Clause of the United States Constitution and that, accordingly, the Secretary should certify teachers without regard to their citizenship or their intention to obtain United States citizenship.

The opinion was premised on the Supreme Court's decision in Graham v. Richardson, 403 U.S. 365 (1971), which struck down, on equal protection grounds, a Pennsylvania statute restricting public assistance eligibility to United States citizens and an Arizona statute restricting public assistance eligibility to citizens and longtime resident aliens. The court held in Graham that "classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny." Id., at 372 (footnotes omitted).

Applying the strict scrutiny standard of Graham, the court subsequently held invalid state statutes which excluded aliens from a state's classified civil service, Sugarman v. Dougall, 413 U.S. 634 (1973), from the practice of law, In re Griffiths, 413 U.S. 717 (1973), from working as an engineer, Examining Board of Engineers, etc. v. Flores de Otero, 426 U.S. 572 (1976), and from receiving state educational benefits, Nyquist v. Mauclet, 432 U.S. 1 (1977). In Sugarman, however, the court recognized that a state could constitutionally require citizenship as a qualification for governmental positions which involve the performance of functions "that go to the heart of representative government." Sugarman v. Dougall, 413 U.S. at 647. The exclusion of aliens from such positions would not, the court indicated, invite strict judicial scrutiny. Id., at 648.

The Supreme Court directly applied the govern-

mental function exception in upholding a New York statute excluding aliens from the state's police force: Foley v. Connelie, 435 U.S. 291 (1978). Because the police function "fulfills a most fundamental obligation of government to its constituency" and because police officers "are clothed with authority to exercise an almost infinite variety of discretionary powers," id., at 297, the state was required to justify its classification only "by a showing of some rational relationship between the interest sought to be protected and the limiting classification." Id., at 296.

The court again applied the governmental function exception in Ambach. Citing Sugarman and Foley, the court concluded that "public school teachers may be regarded as performing a task 'that go[es] to the heart of representative government'" and that "[p]ublic education, like the police function, 'fulfills a most fundamental obligation of government to its constituency.'" Ambach v. Norwick, 441 U.S. at 75-76 (citations omitted). The court then applied the rational relationship test to uphold the New York statutory scheme for restricting alien eligibility for teacher certification.

Clearly, Ambach requires reversal of the advice rendered in Opinion no. 9 of 1973. It was concluded in that opinion that teaching in the public schools is not an essential governmental function. The Supreme Court, of course, concluded otherwise in Ambach. The opinion also subjected the relevant provisions of the Public School Code to a compelling state interest test. It is clear, however, from Ambach that the classification created by those provisions need only be rational to withstand equal protection challenge.

The Statutory Construction Act requires that section 1202 of the Public School Code, to the extent it renders resident aliens who have declared in writing their intention to become United States citizens eligible for provisional teacher certification, be read as an exception to the general requirement of section 1109 that every public school teacher in the Commonwealth be a citizen of the United States. See 1 Pa.C.S.A. § 1933. The statutory scheme thus created closely resembles the statutory scheme in New York which the Supreme Court, applying the rational relationship test, upheld in Ambach.

Accordingly, we are compelled to conclude that sections 1109 and 1202 of the Public School Code are constitutional and that, therefore, those provisions must once again be enforced. As of the date this opinion is issued, no permanent certificate may be granted to any individual who is not a citizen of the United States and no provisional certificate may be granted to any individual who is not a citizen and has not declared in writing to the Department of Education the intention of becoming a citizen.[1]

## II. Status of Resident Aliens Certified Since the Issuance of Opinion 73-9.

In determining the status of resident aliens certified to teach in Pennsylvania since the issuance of

---

1. These conclusions are, of course, subject to the exceptions specifically prescribed in sections 1109 and 1202 for exchange teachers and teachers employed to teach foreign languages.

Opinion no. 9 of 1973,[2] we must balance the interest of such individuals in continued eligibility to teach in the Pennsylvania public schools against the public interest in the enforcement of the School Code's citizenship requirements. Striking that balance requires, in our opinion, that individuals permanently or provisionally certified to teach without having secured or having declared their intention to secure United States citizenship be afforded a reasonable period of time within which to do so without being subject, during that period, to loss of employment or revocation of certification.

As previously observed, section 1202 of the Public School Code renders eligible for a provisional certificate a resident alien who has declared in writing to the Department of Education the intention of becoming a United States citizen. Section 1204, 24 P.S. § 12-1204, limits provisional certificate-holders to one three-year certificate and one three-year renewal.[3] Section 1205, 24 P.S. § 12-1205, renders teaching under a provisional certificate a qualification for permanent certification.

---

2. The status of resident aliens certified to teach since the issuance of Opinion 73-9 is an issue because opinion 73-9 could not and did not render the relevant Public School Code provisions a nullity. As an officer of the executive branch of state government, the Attorney General has no power to declare unconstitutional and thereby void a statute; that power rests exclusively with the judiciary. At most, the Attorney General is empowered, when clearly convinced that a statute is unconstitutional, to advise his executive official client that, pending judicial review, the statute should not be enforced.

3. By regulation of the State Board of Education, provisional certificates are valid for a period of six years. See 22 Pa. Code §49.82. The State Board has thus incorporated the renewal period ab initio into the life of the certificate.

In our view, the General Assembly's purpose in rendering eligible for provisional certification resident aliens who have declared their intention to secure citizenship was to permit them to teach for a period of up to six years in order that they may, by pursuing citizenship during that period, simultaneously satisfy the teaching and citizenship requirements for permanent certification. In light of this purpose, we believe it appropriate to afford resident aliens certified to teach since the issuance of Opinion no. 9 of 1973 a period of six years within which to become United States citizens.

It is our understanding that, in accordance with the mandate of Opinion no. 9 of 1973, the Department of Education, since the issuance of that opinion, has not inquired as to the citizenship status of applicants for certification. We are further advised that the department does not maintain current address data for certificateholders and that as many as 200,000 certificates have been issued by the department since the issuance of Opinion no. 9 of 1973. In this setting, it is not feasible to implement this opinion by direct notification to all certificateholders only a very small percentage of whom, of course, are noncitizens.

In our view, identification of noncitizen certificateholders and affording them notice of this opinion and its effect is best accomplished through the district superintendents and school principals in the public school system. While this approach will not reach every noncitizen holding a Pennsylvania teaching certificate, it will accomplish the essential purpose of ensuring enforcement of the Public School Code's mandate that every teacher employed to teach in the public schools of the Commonwealth be a United States citizen or a resident alien who has declared, in writing, to the De-

partment of Education the intention of becoming a United States citizen.

We shall not attempt herein to detail a comprehensive system for implementation of this opinion. Such is an administrative task properly delegated to the appropriate program personnel in the Department of Education. We shall, however, require that the system developed be approved as to legality by this office prior to its effectuation and that the following guidelines be observed:

(1) Noncitizen certificateholders should be given a fixed and limited period of time, following the date on which they are notified of this opinion and its effect, within which to declare their intention to become United States citizens.[4]

(2) Resident aliens holding permanent certification should be permitted to retain their permanent certificates throughout the six-year period following the date on which they declare their intention to become United States citizens.

(3) Resident aliens holding provisional certification should be issued a new provisional certificate effective the date on which they declare their intention to become United States citizens.[5]

---

4. Since the Department of Education does not inquire into the citizenship status of applicants for certification, it is conceivable, though unlikely, that responses to the notice will reveal individuals holding certificates who, not only are not U.S. citizens, but also are not "resident foreign national[s] holding an immigrant visa." 24 P.S. §12-1202. In such event, the Department of Education should seek the further advice of this office since each such case may require a particularized resolution.

5. The certificate should be valid for the entire six-year period prescribed in 22 Pa. Code §49.82.

(4) Where necessary, and otherwise to the extent appropriate, this opinion should be implemented not only by direct communication to local school officials and, through them, to noncitizens teaching in the public schools, but also by amendment to Department of Education and/or State Board of Education regulations.

(5) As part of the notice of this opinion and its effect, resident alien certificateholders should be advised that, if they do not declare their intention to become citizens within the time limit prescribed by the Department of Education or if they do not, in fact, obtain United States citizenship within the six-year period following the date on which they declare their intention to become citizens, they shall no longer be eligible for employment in the Pennsylvania public schools and shall be subject to revocation of certification.

This office stands ready to assist the Department of Education in the implementation process.